STELLA THOMPSON v. BANKERS MUTUAL CASUALTY INSURANCE COMPANY.[1]

February 19, 1915.

Nos. 19,038—(253).

**Accident insurance — intoxication — burden of proof.**

1. This action is brought on an accident insurance policy to recover for death due to accidental injury. By the terms of the policy there can be no recovery if deceased was intoxicated at the time of injury. The bur-

[1] Reported in 151 N. W. 180.

---

Note.—On the question of presumption and burden of proof as to intoxication in action on accident insurance policy, see note in 15 L.R.A. (N.S.) 212.

den was on the defendant to prove intoxication. The evidence is conflicting and it is not conclusive that deceased was intoxicated.

#### Evidence — opinion of expert — hearsay.

2. Expert testimony of a physician based in part upon statements made to him by others may properly be received if the evidence shows what the reported statements were and there is evidence in the case tending to prove their truth.

#### Evidence admissible.

3. Any evidence tending to cast doubt upon defendant's theory of intoxication was proper, though not sufficient in itself to disprove it.

#### Witness — impeachment — conviction of crime.

4. Conviction of any crime, whether felony or petty misdemeanor, may be proved in order to impeach a witness. The nature of the crime may properly be shown.

Action in the district court for Mower county by a minor to recover $1,500 upon defendant's accident insurance policy in favor of plaintiff's father. The answer set up several defenses, one that decedent was violating the law governing the driving of automobiles, another that his injuries were caused by his intoxication, a third that he was an intemperate person during the life of the policy. The case was tried before Quinn, J., who denied defendant's motion for dismissal of the action, and a jury which returned a verdict for $1,649. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Simon Michelet, Clyde R. White* and *Catherwood & Nicholsen,* for appellant.

*Sasse & French,* for respondent.

HALLAM, J.

On May 19, 1912, the body of Lee Thompson was found lying by the roadside under an overturned automobile which he had been driving. He held a policy of accident insurance issued by defendant in which plaintiff was named as beneficiary. Plaintiff brought suit on this policy and recovered a verdict. Defendant appeals.

1. The policy provided that defendant should not be liable for any accidental injuries received by deceased while intoxicated. De-

fendant claims that the evidence conclusively shows that deceased was intoxicated at the time of his death. The story of deceased's movements on the night of the accident, so far as they are known, are in general as follows: Deceased lived at Lansing, about six miles north of Austin. Late in the afternoon of May 18, he took his automobile and went to Austin on an errand, returning early in the evening. He then spent some time in the barn of one Fred Leek, at Lansing, and drank some liquor there. He then again went to Austin with a party of men, returning to Lansing about midnight, but passing straight through the town to the north. Nothing more was seen of him until three o'clock in the morning, when three farmers living four miles northeast of Lansing found deceased with his automobile stalled in the mud by the roadside, and they helped him out. The party then consisted of deceased, Leek, and one Herbert Hunt. They were then within one and one-half miles of Hunt's home but did not go there. Instead, they started to return to Austin. As they passed through Lansing, Leek left the car and went home. Hunt alone remained with deceased. As they came near Austin the road turns to the right. At this turn the car went over an embankment on the left side of the road, and deceased and Hunt were pinned beneath the car. Hunt was rescued alive, but deceased was dead when help came. The circumstances point strongly to a night of debauch. Deceased had been out most of the night. He was given to drinking to excess. So was Hunt. Hunt was admittedly intoxicated on this night. They had both beer and whisky in the automobile. On the other hand, there is the direct testimony of a large number of witnesses who saw deceased at several times during the night. The decided weight of this direct testimony is to the effect that deceased was in fact sober. The three farmers, who were the last witnesses to see him, gave unqualified testimony to this effect. Two juries have passed upon the case and each found that deceased was sober. The last verdict has the approval of the trial court. The burden of proving that the policy was avoided by the intoxication of deceased was upon the defendant. Lockway v. Modern Woodmen of America, 121 Minn. 170, 141 N. W. 1. It is clear

that the verdict is not clearly or palpably against the evidence, and we shall not disturb it.

2. Dr. Pierson, the coroner, was called as a witness for the plaintiff. He arrived at the scene of the accident soon after the automobile was removed from deceased. When he arrived, deceased was lying on the ground face downward and witness saw a mark across the back of his coat as if something had rested upon it. The witness stated that he ascertained the cause of death, and was permitted to testify that death was caused by suffocation due to the pressure of the heavy automobile upon his body. Objection is made that it appears from the doctor's testimony that his opinion is founded in part on what others told him as to conditions that existed before he arrived. Undoubtedly an expert witness should not be permitted to give an opinion without giving the facts upon which the opinion is based, and there should be competent evidence in the case tending to prove such facts. Miller v. St. Paul City Ry. Co. 62 Minn. 216, 64 N. W. 554; Webb v. Minneapolis Street Ry. Co. 107 Minn. 282, 119 N. W. 955. But we think it clear from all the evidence of Dr. Pierson that the hearsay report upon which he formed his opinion was the report that deceased when found was lying upon the ground with the automobile upon him, and that the mark which witness saw across his back was made by the pressure of the automobile seat. These facts were all in evidence and an opinion might properly be predicated upon them.

3. It is contended the court erred in permitting an automobile expert to testify that there was a "blow out" in the left front tire of the automobile, and that the effect of such a "blow out" would be to cause the car to move toward the side of the disabled tire. The purpose of the testimony was to account for the fact of the automobile going over the embankment. Defendant was contending the automobile went in a straight course over the bank without attempting to turn the corner, and urged that fact as ground for the belief that deceased was intoxicated. Plaintiff contended that deceased had started to turn his car around the corner and had made half the turn, and this fact and the additional fact of the "blow out"

which would carry the car in the direction of the bank were urged as accounting for the accident without necessity of resorting to defendant's theory of intoxication. In other words, the testimony as to the "blow out" had some tendency to meet and rebut defendant's theory of the case. The testimony was proper enough.

4. Plaintiff was permitted to show by way of cross-examination of one of defendant's witnesses that the witness had been convicted upon his own confession of the crime of assault, and to show the nature of the assault, that is, that it consisted in attempting to kiss a married woman. The admission of this evidence is assigned as error. The statute permits this form of impeaching testimony. It provides that "every person convicted of crime shall be a competent witness * * * but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination." G. S. 1913, § 8504. The statute applies to all crimes. It bars none, whether felonies or petty misdemeanors, and whether the crime was or was not a crime at common law. In determining whether proof of conviction is admissible there is no room for inquiry as to whether or not the crime is one which affects the weight of the witness' testimony. State v. Sauer, 42 Minn. 258, 44 N. W. 115; Harding v. Great Northern Ry. Co. 77 Minn. 417, 80 N. W. 358. We do not doubt, however, that it was proper to show the character of the crime of which the witness was convicted. Evidence of conviction of any crime is admissible; nevertheless conviction of some crimes will reflect more on the credibility of a witness than would conviction of others. The nature of the offense may, therefore, properly be shown. See State v. Adamson, 43 Minn. 196, 200, 45 N. W. 152.

Some claim is made that deceased must have died of heart disease before the automobile capsized, and that death was accordingly not accidental. We find no evidence to require such a conclusion.

Order affirmed.